HAMLIN J. COOK, plaintiff in error, *vs.* F. P. SMITH *et al.*, defendants in error.

A bill was filed against Frank P. Smith and D. Smith, by a creditor of the former, charging a combination between the defendants to defraud the creditors of Frank P. Smith. Frank P. Smith, alone, answered the bill and moved to dissolve the injunction as to himself: *Held*, That it was error in the Court to hear the motion until the other defendant, who was in fact the principal defendant, had answered.

Equity practice. Injunction. Decided by Judge J. M. CLARK. Baker Superior Court. November Term, 1868.

Cook filed, in September, 1868, a bill in equity, containing the following averments: On the 8th of May, 1868, F. P. Smith and himself agreed, to enable F. P. Smith to carry on his farm in said county, that Cook should accept his draft for $3,889 17, and for other sums thereafter, and that F. P. Smith would secure him by a mortgage on his entire crop of cotton then growing on his plantation in said county, and would deliver the cotton at Cook's warehouse, in Albany, Georgia, by or before the 6th of January, 1869. The draft was accepted and the mortgage was made and delivered. By this assistance F. P. Smith grew a crop of cotton which will yield say fifty bales. Recently, F. P. Smith made a colorable sale of his entire crop to his brother, Dock Smith, with intent to defraud Cook. With this intent the two have sent three

bales of said cotton to Rust & Johnson, warehousemen, of Albany, and Dock Smith has sold one bale, and appropriated the proceeds to his own use. F. P. Smith is threatening to leave the State, and he and Dock Smith are both insolvent. The main portion of the crop is ungathered, and is in danger of being lost. Besides said acceptance, Cook accepted other drafts for F. P. Smith, amounting to, say $800 00.

He prayed for an answer and account by both of said parties, *ne exeat* against F. P. Smith, injunction against both from interference with the crop, and that a Receiver should take charge of the same. The bill was sanctioned, injunction and *ne exeat* issued, and a Receiver was appointed. Afterwards, in October, Cook filed a supplemental bill changing the averrments as follows: Said draft was the result of an account and settlement between him and F. P. Smith, for advances, acceptances and provisions before that furnished by him to F. P. Smith, and a draft for $3,000 00 drawn by R. M. Scurry and F. P. Smith, payable to R. S. Williams, due 15th September, 1857; said Dock Smith and R. M. Scurry, now non-resident in this State, and R. S. Williams farmed together under the style of R. S. Williams & Co., and sometime in 1867 Williams sold out his interest in the then growing crop for $3,000 00, and said draft was drawn to pay that sum, and Cook accepted and paid the draft; in drawing this draft F. P. Smith was acting only as the agent of Dock Smith, and himself acquired nothing by said sale, or, if he acquired any interest, it was only to protect Dock Smith from loss; a part of the consideration of said $3,889 17 draft were two drafts accepted and paid by Cook, drawn by Scurry and Smith for Dock Smith, dated July 2d, 1867, and one due September 8th, 1867 for $800 00, and the other for $200 00, due 2d September 1867; Cook accepted and paid three other drafts drawn by F. P. Smith on Cook to enable F. P. and Dock Smith to make their crop during 1868, to-wit: one due 1st November, 1868, for $210 39; one due 15th November, 1868, for $306 51, and the other due 15th December, 1868, for $150 00.

Intending to defraud Cook, F. P. Smith substituted his

own draft for said drafts of Dock Smith and said Scurry, in order to release Dock Smith. After this, F. P. Smith colorably sold "the Frank Smith plantation" with the horses, mules, stock, cattle, hogs, corn, fodder, wagons, tools, etc., (except the growing crop of cotton,] to Dock Smith. In order to deceive Cook, F. P. Smith, when he drew said large draft, said he would make from forty to seventy bales of cotton, and that forty of them would pay the draft. Cook believed all this. But in fact, F. P. Smith will not make over twenty bales of cotton, and part of that will go to pay the laborers. Cook furnished provisions, etc., to F. P. Smith to carry on the farm, and he let Dock Smith have part of them in order to make his crop unencumbered. He fears that Dock Smith will sell the land and F. P. Smith will sell the promises of Dock Smith to pay for it, unless they are restrained, inasmuch as both are insolvent. The additional prayer was that the Receiver should take charge of the land, and that it should be sold to pay Cook, and that injunction issue to prevent the said transfers. The Chancellor sanctioned the bill and granted the order as prayed for.

The bill was served on each of the Smiths, the supplemental bill was served on F. P. Smith, and a copy was left with him for Dock Smith. F. P. Smith only, answered the bill. He denied having sold his cotton crop to Dock Smith, or that said three bales had been sent from the plantation, or that Dock Smith had sold the one bale; he denied intending to leave the State; he denied acting for Dock Smith in drawing said large draft, and said that Cook asked him to assume the whole indebtedness of Scurry and Smith, because they were insolvent, and he drew the draft bona fide for that purpose; he said he did not sell to Dock Smith with "the F. P. Smith plantation" anything but six mules, wagons, plantation tools, one hundred bushels of corn, and about three or four thousand pounds of fodder. In 1858, F. P. Smith bought one-half interest in said plantation from his father, at $1,800 00, and of this, he owed his father $200 00 in January, 1867. In February, 1867, he bought from his father the other half of the plantation, stock, tools, etc., for

Cook vs. Smith et al.

$2,834 34 on a credit; Dock Smith brought these claims on F. P. Smith from his father, and F. P. Smith being involved by the operations of 1867, sold out to Dock Smith as aforesaid at $3,800 00, which was paid by claims held on him by Dock Smith. He denied the statement as to making from forty to seventy bales of cotton. He said he had more provisions than he needed and sold some to Dock Smith on credit, which was yet unpaid. He denied that Dock Smith had had any control of his crop except for a short time as overseer. All the other statements were admitted, save that he said that all had been done *bona fide.*

When this answer was filed, solicitors for the Smiths, upon it alone, moved to dissolve the injunction, etc. Cook's solicitors objected to a hearing until Dock Smith answered. His objection was overruled, the argument was heard, and the injunction was dissolved as to Dock Smith. Of this complaint is made here.

STROZIER & SMITH, (by R. LYON,) for plaintiff in error.

VASON & DAVIS, J. J. HALL, for defendants.

McCAY, J.

The only point made in this case is that it was error in the Court to dissolve the injunction on the answer of F. P. Smith alone, and before the other defendant answered.

The defendant who failed to answer was the principal defendant. He it was who was charged with the fraud. F. P. Smith is alleged to be a mere instrument. In such cases the rule is imperative, that at least the principal defendant must answer. Daniel's Chan. Practice, 1823, and note with authorities. The general rule is that all the defendants must answer, (Daniel's Chan. Practice, 1823,) unless the parties be some of them merely formal or inaccessible.

Here the principal defendant has failed to answer. We think the Court ought to have required the other answer. These men were brothers, and the record shows that all the truth is not set forth.

Judgment reversed.